James D. WRIGHT, Plaintiff-Appellant,

v.

SOUTHLAND CORPORATION, a foreign corporation authorized to do business in the State of Florida, Defendant-Appellee.

No. 97-3458.

United States Court of Appeals,

Eleventh Circuit.

Sept. 3, 1999.

Appeal from the United States District Court for the Middle District of Florida. (No. 95-819-Civ-ORL-18), G. Kendall Sharp, Judge.

Before TJOFLAT, COX and HULL, Circuit Judges.

TJOFLAT, Circuit Judge:

This appeal presents a question that has baffled courts and commentators for some time: What constitutes "direct evidence" of employment discrimination? After carefully examining our cases on the question, as well as the legal framework into which those cases fit, we conclude that direct evidence of employment discrimination is evidence from which a trier of fact could conclude, based on a preponderance of the evidence, that an adverse employment action was taken against the plaintiff on the basis of a protected personal characteristic. In this case, the district court relied upon an incorrect definition of direct evidence in granting summary judgment for the defendant; we therefore vacate the grant of summary judgment and remand the case for further proceedings based on the analysis presented herein.

I.

James D. Wright was the manager of a 7-11 convenience store in Kissimmee, Florida. He held that position from 1978 until 1995, at which time he was discharged.

The Southland Corporation—owner of the 7-11 chain—asserts that it fired Wright because of continuing merchandise control problems; in other words, a substantial portion of the merchandise received by Wright's store had disappeared without being accounted for in either sales or inventory. In addition,

Southland cites two violations of its "Banking Awareness Policy": one based on discrepancies between written deposit records and actual amounts deposited, and one based on a failure to make a nightly deposit.

Wright, however, asserts different explanations for his discharge. Wright claims that Southland fired him because of his age (55 at the time of discharge), in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34 (1994). In the alternative, Wright argues that he was discharged in retaliation for his filing of a claim of age discrimination with the Equal Employment Opportunity Commission ("EEOC") shortly before his termination, in violation of section 704 of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a) (1994).

Wright filed suit in the United States District Court for the Middle District of Florida seeking damages and an injunction ordering Southland to reinstate him. The district court granted summary judgment for Southland. Wright appeals.

## II.

Employment discrimination law has become an area of great—and often needless—complexity in the federal courts. We therefore begin this part of our opinion by summarizing the basic principles of that law. We then (in section B) address the particular issue raised by this case: the meaning of the "direct evidence" standard in employment discrimination cases.

## A.

Every employment decision involves discrimination. An employer, when deciding who to hire, who to promote, and who to fire, must discriminate among persons. Permissible bases for discrimination include education, experience, and references. Impermissible bases for discrimination, under federal law, include race, sex, and age. *See* 29 U.S.C. § 623; 42 U.S.C. § 2000e-2(a) (1994). Thus, in an employment discrimination suit, the key question usually is: On what basis did the employer discriminate? Put another way, the question is one of causation: What caused the adverse employment action of which the plaintiff complains?

The means by which a plaintiff can prove impermissible discrimination have been modified somewhat since the passage of the first anti-discrimination laws.[1] Prior to 1973, employment discrimination cases were tried in the same manner as any other civil action. *Cf.* Preface, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 *Harv.L.Rev.* 1109, 1111 (1971) (stating that employment discrimination cases alleging disparate treatment are "analytically easy," and "the only issues are factual"). The plaintiff had the burden of presenting evidence from which the trier of fact could conclude, more probably than not, that the defendant-employer took an adverse employment action against the plaintiff on the basis of a protected personal characteristic. If the plaintiff failed to carry this burden, then the employer was entitled to summary judgment or judgment as a matter of law. *See* Fed.R.Civ.P. 50, 56. If, however, the plaintiff succeeded in carrying this burden, then the trier of fact had to listen to all of the evidence and determine whether a protected personal characteristic was the cause of the adverse employment action. This traditional method of trying a case will hereinafter be called the "traditional framework."

The nature of discrimination suits, however, rendered the traditional framework inadequate to effect fully Congress' intent to eliminate workplace discrimination. A discrimination suit (unlike, for instance, an action for negligence or breach of contract) puts the plaintiff in the difficult position of having to prove the state of mind of the person making the employment decision. *See United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (noting difficulty of the issue). Furthermore, unlike some other torts, in which state of mind can be inferred from the doing of the forbidden act, the employer's state of mind cannot be inferred solely from the fact of the adverse employment action—in other words, whereas in an action for battery the defendant's intent to cause harm may be inferred solely from the fact that he was swinging a baseball bat at the plaintiff, an employer's intent to discriminate cannot be inferred solely from the fact that he discharged an individual with a protected personal

---

[1]The discussion in this part applies only to "disparate treatment" cases; we do not address the separate issues raised by "disparate impact" cases.

3

characteristic.

To make matters somewhat easier for plaintiffs in employment discrimination suits, the Supreme Court, in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), developed a presumption that supplemented—but did not replace—the traditional framework.[2] *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987). This presumption operates as follows: If a plaintiff chooses to make use of the *McDonnell Douglas* presumption, he initially does not need to present evidence from which the trier of fact could conclude that the adverse employment action taken against him was caused by improper discrimination. Instead, he need only establish that (1) an adverse employment action was taken against him, (2) he was qualified for the job position in question, and (3) different treatment was given to someone who differs in regard to the relevant personal characteristic.[3] For instance, if a plaintiff

---

[2] *McDonnell Douglas* involved racial discrimination in employment, but its holding subsequently has been adapted to other forms of employment discrimination. *See Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir.1989) (age discrimination); *Adams v. Reed,* 567 F.2d 1283, 1285 n. 5 (5th Cir.1978) (sex discrimination).

[3] This is a very broad statement of what is required under *McDonnell Douglas.* The specifics vary based upon the type of discrimination alleged (e.g., discrimination in hiring, discrimination in promotions) and the protected personal characteristic involved (e.g., race, sex). *See McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. In *McDonnell Douglas* itself, the plaintiff alleged that he was not hired because of his race. Under those circumstances, the Supreme Court stated that the plaintiff must establish:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's [job] qualifications.

*Id.* at 802, 93 S.Ct. at 1824. Requirements (ii) and (iii) in the *McDonnell Douglas* case correspond to requirements (2) and (1), respectively, of the general requirements stated in the text. Requirements (i) and (iv) adapt requirement (3) of the general requirements stated in the text to the unique situation in which the position sought by the plaintiff remains unfilled. *See Crawford v. Western Elec. Co.,* 614 F.2d 1300, 1315 (5th Cir.1980) (stating that the plaintiff must establish that the employer "either continued to attempt to fill the positions or in fact filled the positions with whites").

Many of the early *McDonnell Douglas* cases (and some later cases) state that the plaintiff must be a member of a protected class—for instance, as quoted above, *McDonnell Douglas* itself states that the plaintiff must establish "that he belongs to a racial minority." Later cases, however, have made clear that Title VII's protections are not limited to certain classes of people; for instance,

4

alleges that he was passed over for a job promotion because of his race, then under *McDonnell Douglas* he must establish that (1) he was in fact passed over for the promotion, (2) he was qualified for the higher position, and (3) an individual of a different race was given the higher position. *See Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1333 (11th Cir.1998). If a plaintiff alleges that she was fired because of her sex, then under *McDonnell Douglas* she must establish that (1) she was in fact fired, (2) she was qualified for her position, and (3) she was replaced by a male (or that males with similar qualifications were retained). *See Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 773 (11th Cir.1982).[4]

Once the plaintiff has established these elements (in other words, persuaded the trier of fact by a preponderance of the evidence of these facts: adverse employment action, qualifications, and differential treatment), unlawful discrimination is presumed. *See Walker v. Mortham,* 158 F.3d 1177, 1183 (11th Cir.1998). The defendant-employer can rebut this presumption only by articulating a legitimate, nondiscriminatory reason (or reasons) for the adverse employment action. *See id.* at 1184. If the employer fails to do so, the plaintiff is entitled to judgment as a matter of law. *See id.* If, however, the employer carries its burden (a burden of production, not persuasion), then the *McDonnell Douglas* presumption "drops from the case." *Id.* At this point, the case is placed back into the traditional framework—in other words, the plaintiff still bears the burden of proving, more probably than not, that the employer took an adverse employment action against him on the basis of a protected personal characteristic. *See St. Mary's Honor*

---

a Caucasian who is discriminated against on the basis of his race has a claim under Title VII that is equal in validity to that of an African American who is discriminated against on the basis of his race. *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 278-80, 96 S.Ct. 2574, 2578-79, 49 L.Ed.2d 493 (1976); *see also Diaz v. Pan Am. World Airways,* 442 F.2d 385, 386 (5th Cir.1971) (sex discrimination). Age discrimination, which is prohibited under the ADEA rather than Title VII, is a slight exception—the plaintiff must establish that he is over 40 years of age. *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). Once this is established, however, he need only prove that he was replaced by someone younger, regardless of whether the replacement is over 40. *See id.*

[4]Both *Lee* and the previous case (*Standard*) list as a requirement that the plaintiff must be a member of a "protected class" or a "protected group"; this stated requirement is inaccurate for the reasons discussed in note 3, *supra.*

*Center v. Hicks,* 509 U.S. 502, 506-08, 113 S.Ct. 2742, 2747-48, 125 L.Ed.2d 407 (1993). The *McDonnell Douglas* presumption, however, has made the plaintiff's task somewhat easier: The plaintiff now has evidence of the employer's proferred reasons for the adverse employment action, and can attempt to show that these proferred reasons are a pretext for discrimination.[5] *See id.* at 516-17, 113 S.Ct. at 2752. (stating that "proving the employer's [proffered] reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination").

Note that the facts required to establish the *McDonnell Douglas* presumption are neither necessary nor sufficient to establish discrimination under the traditional framework. They are not necessary because a plaintiff may be able to prove discrimination despite the fact that he was unqualified for the position, or that he did not differ from the person selected in regard to a protected personal characteristic. For instance, imagine a situation in which a racist personnel manager for a corporation fires an employee because he is

---

[5]For instance, imagine a case in which a qualified African-American employee is discharged from a job and replaced by a Caucasian. The former employee suspects that he was fired because of his race, and files a lawsuit. After some early discovery, it becomes apparent that there is no "smoking gun" linking the plaintiff's termination to racial discrimination, and that the plaintiff's only evidence of discrimination is that he is a qualified African American, but was nevertheless fired and replaced by a Caucasian. Under the traditional framework, the plaintiff's case probably would not survive the employer's motion for summary judgment—there are far too many potentially legitimate reasons for the employee's termination to conclude, based on the evidence outlined above, that the plaintiff was more probably than not fired because of his race. *See Walker v. Mortham,* 158 F.3d 1177, 1183 n. 10 (11th Cir.1998).

Under *McDonnell Douglas,* however, once the plaintiff has presented the above evidence, the employer is required to articulate a lawful reason for its actions. For instance, in this hypothetical, the employer might claim that the plaintiff was fired because of his inability to work with others. The plaintiff could then attempt to prove that the proffered explanation was pretextual—for instance, by offering testimony from numerous supervisors, co-workers, and customers that the plaintiff had outstanding interpersonal skills. If the plaintiff's attempt is successful, this would tend to prove that the employer is hiding the true reasons for firing the plaintiff. Furthermore, the evidence relating to the employer's proferred reason for the discharge may lead to the discovery of other evidence tending to prove discrimination. All of this new evidence—combined with the evidence that the plaintiff was a qualified African American who was replaced by a Caucasian—might be sufficient to create an issue for the trier of fact on whether racial discrimination was the cause of the plaintiff's termination. In this way, the *McDonnell Douglas* presumption allows a plaintiff to prove discrimination in cases in which he otherwise might not be able to do so.

6

African American. Shortly thereafter, the racist personnel manager is replaced, and the previously terminated employee is replaced by another African American. Under these circumstances, the first individual would have been a victim of illegal discrimination, despite the fact that his replacement was of the same race.

Also, the elements needed to establish the *McDonnell Douglas* presumption, standing alone, are not sufficient to prove that the plaintiff, more probably than not, was a victim of illegal discrimination. As we have previously stated (in a sex discrimination case):

> [I]n an employment discrimination case, if the plaintiff can establish [the facts triggering the *McDonnell Douglas* presumption]—e.g., that she is female, that she applied for a position with the defendant employer, that she was qualified for the position, and that the position was given to a male—it does not logically follow that the employer discriminated against the plaintiff on the basis of her sex. [This evidence], standing alone, puts the evidence in equipoise—although one could reasonably conclude that the plaintiff was not hired because of her sex, one could just as reasonably conclude that the plaintiff was not hired because the employer did not like the suit she was wearing, or because the employer's son was also an applicant, or because another applicant agreed to work for half the posted salary, or any number of reasons other than sex discrimination.

*Walker v. Mortham,* 158 F.3d 1177, 1183 n. 10 (11th Cir.1998). This point has been the source of some confusion, because the quantum of evidence needed to create a jury question under the traditional framework and the establishment of the facts required to establish the *McDonnell Douglas* presumption are both known as the "prima facie case." The phrase "prima facie case," however, has a meaning under the traditional framework very different from its meaning under *McDonnell Douglas*—in the former case it means a case strong enough to go to a jury, in the latter case it means the establishment of a rebuttable presumption. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981).

In sum, the plaintiff in an employment discrimination lawsuit always has the burden of demonstrating that, more probably than not, the employer took an adverse employment action against him on the basis of a protected personal characteristic. To assist him in this endeavor, the plaintiff may, if he chooses, attempt to establish the *McDonnell Douglas* presumption and thereby force the defendant to articulate a lawful reason for the adverse employment action. Once this happens, the plaintiff returns to the traditional framework, but

7

with an additional piece of evidence—the employer's proferred reason for the action (which in turn may lead to more evidence, such as evidence that this proferred reason is merely pretextual). Alternatively, the plaintiff may forego *McDonnell Douglas* and simply attempt to prove illegal discrimination "under the ordinary standards of proof." *EEOC v. Clay Printing Co.,* 955 F.2d 936, 940 (4th Cir.1992); *see also O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 310, 116 S.Ct. 1307, 1309, 134 L.Ed.2d 433 (1996); *Ramirez v. Sloss,* 615 F.2d 163, 169 (5th Cir.1980)[6] (stating that the plaintiff did not need to establish the *McDonnell Douglas* presumption after demonstrating that the defendant's refusal to hire him "was more likely than not" based on improper discrimination).

B.

The proper legal analysis in employment discrimination cases—which, as outlined above, is fairly complex—has been further complicated by the indiscriminate use of the term "direct evidence." The result has been substantial confusion in the district courts in our circuit.[7] In this section, we cut through this confusion and explain that "direct evidence," in the context of employment discrimination law, means evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic.

The importance of properly defining "direct evidence" arises from our repeated statements that when a plaintiff has direct evidence of illegal discrimination, he need not make use of the *McDonnell Douglas* presumption, and conversely, when he does not have such direct evidence, he is required to rely on the *McDonnell Douglas* presumption. *See, e.g., Bogle v. Orange County Bd. of County Comm'rs,* 162 F.3d 653,

---

[6]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[7]*See, e.g., Dilla v. West,* 4 F.Supp.2d 1130, 1137 (M.D.Ala.1998), *aff'd* 179 F.3d 1348 (11th Cir.1999) ("[T]he determination of whether the plaintiffs have established age discrimination by direct evidence is somewhat complicated by the fact that the definition of what constitutes direct evidence of discrimination is subject to frequent shifts, even among different panels of the Eleventh Circuit Court of Appeals."); *Hearn v. General Elec. Co.,* 927 F.Supp. 1486, 1497-98 (M.D.Ala.1996).

656 (11th Cir.1998); *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1331 (11th Cir.1998); *see also Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621-22, 83 L.Ed.2d 523 (1985). In other words, a plaintiff in an employment discrimination suit may proceed by one of two means: (1) *McDonnell Douglas,* or (2) direct evidence.[8] As the analysis in part II.A should have made clear, the *McDonnell Douglas* presumption is merely an evidence-producing mechanism that can aid the plaintiff in his ultimate task of proving illegal discrimination by a preponderance of the evidence. Consequently, if "direct evidence" is the alternative to using *McDonnell Douglas,* the term would seem necessarily to mean evidence sufficient to prove, without benefit of the *McDonnell Douglas* presumption, that the defendant's decision was more probably than not based on illegal discrimination.

The problem, however, is that "direct evidence" has a well-established meaning in the law of evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption." *Black's Law Dictionary* 460 (6th ed.1990). For instance, in a murder prosecution, the prosecutor must establish the fact that the defendant killed the victim. A witness who testifies that she saw the defendant kill the victim has provided direct evidence of this fact; if the jury believes the witness' testimony, then the fact that the defendant killed the victim has been proven. Direct evidence is the opposite of "circumstantial" (or "indirect") evidence, which is "[e]vidence of facts or circumstances from which the existence or nonexistence of fact in issue may be inferred." *Id.* at 243. Returning to the murder hypothetical, a witness who testifies that she saw the defendant enter the victim's home and exit three minutes later with blood on his hands has provided circumstantial evidence that the defendant killed the victim; a jury could reasonably infer from this evidence (combined with other circumstantial evidence) that the defendant killed the victim, but could also reasonably infer, depending on the other evidence presented at trial, that the defendant found the victim dead

---

[8]It is sometimes said that there is a third method of proving discriminatory treatment—"statistical proof of a pattern of discrimination." *Buckley v. Hospital Corp. of Am., Inc.,* 758 F.2d 1525, 1529 (11th Cir.1985). This method is not relevant to the case at hand; we therefore do not address the question of whether it is in fact a separate and distinct method of proving discriminatory treatment.

in her home, got blood on his hands while checking for a pulse, and left immediately out of fear that the murderer was still in the house.

We are therefore presented with two possible definitions of "direct evidence" in the law of employment discrimination. The first is the one that follows logically from the structure of employment discrimination law—namely, evidence from which a reasonable factfinder could find, by a preponderance of the evidence, a causal link between an adverse employment action and a protected personal characteristic. We will refer to this definition as the "preponderance" definition. The second is the traditional definition from the law of evidence—namely, evidence that, if believed, proves the existence of a fact in issue without inference or presumption. We will refer to this definition as the "dictionary" definition. As discussed in this section, all indicators point toward adopting the preponderance definition.

1.

We begin by looking at precedent. Our cases have defined "direct evidence" in a variety of ways. Some cases quote the dictionary definition of direct evidence. *See, e.g., Burrell v. Board of Trustees of Ga. Military College,* 125 F.3d 1390, 1393 (11th Cir.1997); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 n. 6 (11th Cir.1987). Other cases say that direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate" on an improper basis. *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir.1999) (citation omitted); *accord Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir.1989). This definition is essentially a restatement of the dictionary definition; if a remark can be interpreted only as an admission of improper discrimination in the relevant employment decision, then no inference or presumption is required to reach a finding of improper discrimination. Still other cases define direct evidence as evidence that "relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 641 (11th Cir.1998) (citation omitted); *accord Caban-Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir.1990). This definition is essentially the same as the

10

preponderance definition; a statement that (1) is by the employer (i.e., by the decisionmaker), (2) reflects a discriminatory attitude, and (3) ties the discriminatory attitude to the relevant employment decision, will generally be sufficient evidence for a trier of fact to conclude more probably than not that the employment decision was based on improper discrimination.

Regardless of the stated definitions of direct evidence in these cases, however, a look at the actual holdings of these cases reveals that they all rely on the preponderance definition. This section examines those holdings.

As an initial matter, it is important to clarify what would constitute direct evidence of illegal discrimination under the dictionary definition. Illegal discrimination means that the adverse employment action of which the plaintiff complains was based (at least in part) on an impermissible criterion, such as race, sex, or age. Thus, relevant evidence for proving illegal discrimination is evidence that demonstrates the state of mind of the employer (or, more concretely, the decisionmaker) at the time of the employment decision. The only "eyewitness" to the state of mind of the decisionmaker is the decisionmaker himself. Consequently, the only direct evidence of illegal discrimination under the dictionary definition would be testimony from the decisionmaker that he took an adverse employment action against the plaintiff on the basis of a protected personal characteristic.[9] Any other form of evidence requires at least one inference to reach the conclusion that the employer has impermissibly discriminated.

---

[9]Note that testimony from another individual (other than the decisionmaker) of statements made by the decisionmaker would not qualify as direct evidence. For instance, imagine that X brings a lawsuit against Y Corp. alleging that she was fired on the basis of her sex. At trial, one of the decisionmaker's co-workers at Y Corp. testifies that he heard the decisionmaker say, "I fired X because she was a woman." This would be direct evidence of the fact that the decisionmaker made the alleged statement; however, it would be merely circumstantial evidence of the fact that the employer illegally discriminated against X. In order for the trier of fact to conclude, based on this testimony, that Y Corp. illegally discriminated against X, the trier of fact must infer that the decisionmaker's statement was an accurate reflection of his state of mind at the time of the employment decision—as opposed, for instance, to an *ex post* demonstration of machismo serving as camouflage for his true reasons for dismissing X.

11

We now turn to the cases.[10]

a.

We begin with cases in which we have held that the plaintiff presented direct evidence of discrimination. As we will demonstrate, in each case numerous inferences—reasonable inferences, but inferences nonetheless—are required to move from the plaintiff's evidence to the conclusion that the defendant relied upon a protected personal characteristic in deciding to take an adverse employment action against the plaintiff. Consequently, the cases cannot be relying upon a dictionary definition of "direct evidence." Furthermore, in each case the plaintiff has presented evidence from which a trier of fact could conclude, more probably than not, that the defendant improperly discriminated against the plaintiff. These cases therefore strongly support the preponderance definition of "direct evidence."

Earlier this year in *Taylor v. Runyon,* 175 F.3d 861 (11th Cir.1999), the plaintiff alleged that she was denied a promotion on the basis of her sex. The plaintiff testified that the decisionmaker told her that she was not promoted because the male with whom she was competing (and who ultimately received the position) had a wife and children and therefore needed the money more than the plaintiff. We concluded that this testimony constituted direct evidence of sex discrimination. *See id.* at 867 & n. 2. Note, however, how far this testimony was removed from direct evidence under the dictionary definition. First, it required the trier of fact to infer that the decisionmaker's beliefs regarding the male's greater need for income were based on a sexual stereotype. Then, having made that inference, the trier of fact would then need to have inferred that this sexual stereotype was the cause of the defendant's refusal to give the plaintiff the desired promotion. These were of course reasonable inferences; consequently, the plaintiff's testimony qualified as direct evidence under the preponderance definition.

In *Caban-Wheeler v. Elsea,* 904 F.2d 1549 (11th Cir.1990), a Hispanic director of a local government

---

[10]In this section, we do not discuss every case discussing "direct evidence"—there are many—but we do cover a substantial and representative portion of the cases on the matter.

12

program alleged that she was terminated because of her race. We held that the plaintiff's testimony that the employer said he "needed a black director" constituted direct evidence of employment discrimination. *See id.* at 1555. This was not direct evidence under the dictionary definition. It involved testimony by someone other than the decisionmaker. *See supra* note 9. It also required the inference that the decisionmaker's felt need for a black director was the reason for the plaintiff's discharge; the trier of fact alternatively could have concluded that the decisionmaker wanted a black director but fired the plaintiff for a different reason, totally unrelated to his desire for a black director. The plaintiff's testimony was, however, direct evidence under the preponderance definition—the employer's statement that he needed a black director could have led a trier of fact reasonably to conclude that the employer more probably than not fired the plaintiff because of her race.

In *Lindsey v. American Cast Iron Pipe Co.,* 772 F.2d 799 (11th Cir.1985), a case similar to *Caban-Wheeler,* the plaintiff alleged that he was not promoted to an assistant manager position because of his age. We held that the plaintiff's testimony that the decisionmaker told him, prior to filling the position, that the company was looking for a younger person to fill the assistant manager position constituted direct evidence of age discrimination. *Id.* at 802. Again, this testimony would not have qualified as direct evidence under the dictionary definition. It involved testimony by someone other than the decisionmaker. Also, it required the inference that the employer's *ex ante* desire for a younger individual was the cause of the plaintiff's failure to receive the promotion; the trier of fact alternatively could have concluded that the employer wanted a younger individual in the assistant manager position but did not promote the plaintiff for entirely different reasons. The plaintiff's testimony was, however, direct evidence under the preponderance definition—the decisionmaker's statement that he wanted a younger person in the assistant manager position could have led a trier of fact to reasonably conclude that the company more probably than not failed to promote the plaintiff because of his age.

In *Buckley v. Hospital Corp. of America,* 758 F.2d 1525 (11th Cir.1985), a nurse supervisor in a hospital alleged that she was terminated because of her age. We held that the following testimony, considered

13

as a whole, constituted direct evidence of age discrimination: that the decisionmaker expressed surprise upon discovering the substantial length of time that some of his employees had been working at the hospital, that the decisionmaker once attributed a loss of temper by the plaintiff to her age, that the decisionmaker stated that he intended to recruit younger doctors and nurses, and that the decisionmaker felt that the hospital needed "new blood."[11] *See id.* at 1530. None of this evidence even resembled a statement by the decisionmaker that the plaintiff was fired because of her age—the first two statements tended to prove that the decisionmaker held certain ageist stereotypes; the second two statements reflected a generalized *ex ante* desire for younger employees; none of these statements tied these facts to the particular employment decision at issue. This evidence was, however, powerful circumstantial evidence from which a trier of fact reasonably could have concluded that the decisionmaker more probably than not fired the plaintiff because of her age.

In *Thompkins v. Morris Brown College,* 752 F.2d 558 (11th Cir.1985), a female professor was working as a high school math teacher in addition to her full-time employment as a professor at the defendant college. She requested a change to part-time status at the college, but was denied. Ultimately, she was fired, purportedly because of her refusal to cease working at the high school. She alleged, however, that both the refusal to move her to part-time status and the ultimate termination were based on her sex. We held that the following testimony from the plaintiff constituted direct evidence of sex discrimination: that one of the decisionmakers stated that he saw no reason for a woman to hold a second job, and that another one of the decisionmakers stated that certain men were allowed to teach part-time because they had families and needs that the plaintiff did not have. *See id.* at 563. This evidence did not constitute direct evidence under the dictionary definition. The testimony came from the plaintiff, not from the decisionmakers. Furthermore, it required inferences to reach the desired conclusion: In regard to the first statement, the trier of fact needed to infer that the decisionmaker's beliefs about women and second jobs were the cause of the actions taken

---

[11]The decisionmaker's reference to the hospital needing "new blood" presumably did not mean a need for fresh plasma products.

14

against the plaintiff; in regard to the second statement, the trier of fact needed to infer both that the decisionmaker's assessment of the needs of the plaintiff versus the needs of certain male professors was based on sexual stereotypes and that these stereotypes were the cause of the actions taken against the plaintiff. These statements, however, reasonably could have yielded the inference that the plaintiff's sex motivated the employer's decision, which means that the case fits perfectly with the preponderance definition of direct evidence—a reasonable trier of fact could have concluded more probably than not that the employer discriminated against the plaintiff because of her sex.

In *Bell v. Birmingham Linen Service,* 715 F.2d 1552 (11th Cir.1983), the plaintiff alleged that the Birmingham Linen Service denied her a promotion to a position in the washroom on the basis of her sex. We held that the decisionmaker's statement that if the plaintiff were allowed into the washroom, all women would want to enter the washroom, was direct evidence of sex discrimination. *See id.* at 1557. It is unclear from the opinion whether this statement was made by the decisionmaker during trial or whether someone else testified that the decisionmaker made the statement; the opinion implies that the testimony came from someone other than the decisionmaker. In any event, as the opinion noted, once this testimony was found credible it constituted "highly probative evidence of illegal discrimination," *id.;* it did not prove the matter conclusively as would be the case if the testimony constituted direct evidence under the dictionary definition. Instead, the trier of fact needed to make the (imminently reasonable) inference that the decisionmaker's concerns about a "slippery slope" in the washroom formed the basis of his refusal to allow the plaintiff to work in the washroom.

In *Lee v. Russell County Board of Education,* 684 F.2d 769 (11th Cir.1982), three minority public school teachers alleged that they were terminated by the school board on the basis of their race. We held that the evidence presented by the plaintiffs constituted direct evidence of racial discrimination. *See id.* at 774-75. This evidence included testimony that a school board member was concerned about getting a greater "white presence" in the school, and that the same school board member later stated (after a new, white teacher was

15

hired) that he was pleased that the new teacher was white. However, none of the school board members testified that race played a role in their decision—on the contrary, each explicitly denied the allegation. *See id.* at 772. Furthermore, there was no evidence linking the school board's general racial sentiments to the employment decisions at issue. There was therefore no direct evidence of racial discrimination under the dictionary definition; our holding in *Lee* makes sense only if the preponderance definition of direct evidence is used.

Finally, in *Ramirez v. Sloss,* 615 F.2d 163 (5th Cir.1980), the first case in which we explicitly held that *McDonnell Douglas* was inapplicable in direct evidence cases, the plaintiff alleged that he was not hired by the defendant because of his alienage.[12] Although the decisionmaker for the defendant denied such discrimination, we held that evidence of the defendant's written policy of hiring only United States citizens, combined with evidence that the decisionmaker explained this policy to the plaintiff when he applied for a job, constituted direct evidence of discrimination. *See id.* at 169 & n. 10. This holding would be incorrect under the dictionary definition of direct evidence—in order to find improper discrimination, the trier of fact needed to infer that the written policy was the basis on which the employment decision was made. Under the preponderance definition, however, this would have been a reasonable inference and thus the evidence would constitute direct evidence of discrimination.

In sum, an examination of our cases in which we held that the plaintiff had "direct evidence" of improper discrimination shows that the term was not used in its traditional sense as evidence that, if believed, proves the existence of a fact in issue without inference or presumption. *See McClurg v. Santa Rosa Golf & Beach Club, Inc.,* 46 F.Supp.2d 1244, 1249 (N.D.Fla.1999) (noting that Eleventh Circuit employment discrimination cases do not use "direct evidence" in the traditional evidentiary sense). Rather, the cases are more consistent with a definition of "direct evidence" as evidence from which a reasonable trier of fact could

---

[12]Refusing to hire an individual on the basis of alienage is illegal under 42 U.S.C. § 1981 (1994). Claims under 1981 are analyzed in the same manner as claims under Title VII or the ADEA. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377-78, 105 L.Ed.2d 132 (1989).

16

find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic.[13]

b.

The cases in which we have held that the plaintiff has failed to present direct evidence of employment discrimination do not undermine the conclusion that we have been relying on the preponderance definition of direct evidence. On the contrary, in each case in which we have held that direct evidence was lacking, the purported direct evidence would have been insufficient to support a finding that the plaintiff more probably than not was a victim of employment discrimination.

For instance, in *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318 (11th Cir.1998), a Caucasian employee alleged that he was fired because of his race. The plaintiff contended that various persons in the defendant corporation made statements reflecting a desire for Hispanic employees, and that these statements constituted direct evidence of racial discrimination. We held that these statements did not constitute direct evidence, because they were made in regard to a different department from the one in which the plaintiff worked, at least two of the three statements were made by people unconnected to the decisionmaking process, and the remaining statement was made before the plaintiff was hired. *See id.* at 1330-31. Such evidence would not have been sufficient for a trier of fact to find more probably than not that the plaintiff's termination was caused by racial discrimination—statements made by persons other than the decisionmakers generally

---

[13]Other cases, not discussed here, to which the same analysis applies include *Haynes v. W.C. Caye & Co.,* 52 F.3d 928 (11th Cir.1995); *Burns v. Gadsden State Community College,* 908 F.2d 1512 (11th Cir.1990); *EEOC v. Alton Packaging Corp.,* 901 F.2d 920 (11th Cir.1990); *EEOC v. Beverage Canners, Inc.,* 897 F.2d 1067 (11th Cir.1990); *Sennello v. Reserve Life Insurance Co.,* 872 F.2d 393 (11th Cir.1989); *Walters v. City of Atlanta,* 803 F.2d 1135 (11th Cir.1986); *Wilson v. City of Aliceville,* 779 F.2d 631 (11th Cir.1986); and *Miles v. M.N.C. Corp.,* 750 F.2d 867 (11th Cir.1985). The *Beverage Canners* case is particularly instructive; there we stated that "[d]iscriminatory motive may be proved by direct evidence of the hiring authority's racially discriminatory attitudes, regardless of whether [the evidence] relates to the employment decision at issue." *Beverage Canners,* 897 F.2d at 1071 n. 9. Such a statement would make no sense under the dictionary definition of direct evidence—if the evidence does not relate to the employment decision at issue, then of necessity an inference must be made to reach the conclusion that the decisionmaker made the relevant decision on an improper basis. The statement makes perfect sense, however, under a preponderance definition of direct evidence.

17

have no probative value, *see infra* note 20, and the only relevant statement made by a decisionmaker in this case was removed in both time and subject matter from the contested employment decision. Consequently, the plaintiff failed to present direct evidence under the preponderance definition.

In *Jones v. Bessemer Carraway Medical Center,* 137 F.3d 1306 (11th Cir.1998), the plaintiff, an African-American nurse, contended that she was discharged because of her race. As evidence in support of this contention, she testified that the head nurse had twice said, "You black girls make me sick," and once said, "You black girls get away with everything." *See id.* at 1313 n. 10. We held that these statements did not constitute direct evidence of racial discrimination. *See Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321, 1323 (11th Cir.1998). They proved at most that the head nurse had some inappropriate racial attitudes; they came nowhere near proving by a preponderance of the evidence that race was the cause of the plaintiff's discharge. As we noted, based on the plaintiff's evidence, a trier of fact "cannot infer it is more likely than not that [the plaintiff's] termination was based on an illegal discriminatory criterion." *Id.*

In *Evans v. McClain of Georgia, Inc.,* 131 F.3d 957 (11th Cir.1997), the plaintiff alleged that he was terminated because of his race. As direct evidence of this allegation, he pointed to statements made by the employer that the plaintiff was "a very large, very strong, very muscular black man" who was attempting to intimidate "three smaller or overweight white men." *Id.* at 962. We held that these statements did not constitute direct evidence, and rightly so—they proved at most that the employer was aware of the racial difference between the plaintiff and other employees (and suspected that the plaintiff was exploiting this difference in some manner); they did not show any connection between such an awareness and the decision to discharge the plaintiff. Consequently, a trier of fact could not have concluded on the basis of this evidence that the plaintiff more probably than not was discharged because of his race.

In *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217 (11th Cir.1993), the plaintiff, a fifty-eight-year-old employee of a thread mill, alleged that he was forced to accept early retirement because of his age. He pointed to a statement by the plant manager telling the plaintiff that he had to retire immediately. (The

plaintiff retired later that day.) We held that this did not constitute direct evidence of age discrimination—this statement was merely evidence that the plaintiff was involuntarily retired;  it in no way tied that involuntary retirement to the plaintiff's age.  *See id.* at 1226.  Therefore, the trier of fact could not have found that the plaintiff more probably than not was dismissed on the basis of his age.

In *Earley v. Champion International Corp.,* 907 F.2d 1077 (11th Cir.1990), the plaintiffs alleged that they were fired on the basis of their age.  As direct evidence, they pointed to internal company documents listing the ages or birth dates of the employees.  In addition, they pointed to the fact that they, unlike previous employees, received no help from the company in finding alternate employment.  *See id.* at 1082.  We held that this did not constitute direct evidence of age discrimination, a holding that fits with the preponderance definition—the evidence proved at most an awareness of the employees' ages and differential treatment in relation to post-employment assistance;  there was nothing in the plaintiffs' evidence relating to the termination decision.

Finally, in *Carter v. City of Miami,* 870 F.2d 578 (11th Cir.1989), the plaintiff alleged that she was fired on account of her age.  The decisionmaker, speaking in reference to another employee, once said that he did not want his office run by "little old Jewish ladies" like his mother-in-law.  We held that this comment was not direct evidence of age discrimination—it was not made in relation to the plaintiff, and thus was only minimally probative of the reason that the plaintiff was terminated.  *See id.* at 582.  This holding again fits with the preponderance definition of direct evidence—because the probative value of the alleged statement was minimal, it was not a sufficient ground on which a trier of fact could have found age discrimination.

c.

In conclusion, in cases in which we have held that direct evidence of improper discrimination was lacking, there was not sufficient evidence from which a trier of fact reasonably could have found that the defendant more probably than not discriminated against the plaintiff on the basis of a protected personal

19

characteristic.[14] Conversely, in cases in which we have held that direct evidence of improper discrimination was present, there was sufficient evidence for such a finding—but the evidence was circumstantial, and required the trier of fact to make at least one inference to reach the desired finding. Consequently, the only logical way to understand the concept of "direct evidence" in the law of this circuit is to understand it as evidence from which a trier of fact could reasonably find that the defendant more probably than not discriminated against the plaintiff on the basis of a protected personal characteristic.

2.

Our own precedent is not the only ground of support for the preponderance definition of direct evidence. As discussed in this subsection, the preponderance definition of direct evidence is supported by the intent of Congress in enacting anti-discrimination laws and the intent of the Supreme Court in creating the *McDonnell Douglas* presumption. In addition, the preponderance definition—unlike the dictionary definition—does not contravene the general evidentiary rule in federal courts that circumstantial and direct evidence are to be treated alike. Finally, the preponderance definition of direct evidence fits better than the dictionary definition with other principles of employment discrimination law.[15]

a.

As discussed in part II.A, *supra,* the facts required to establish the *McDonnell Douglas* presumption are not necessary to establish discrimination under the traditional framework. For instance, it is both logically and practically possible for an employer to discriminate against a person on the basis of a protected personal characteristic despite the fact that the person is replaced by someone with the same characteristic—as shown

---

[14]Other cases, not discussed here, to which the same analysis applies include *Carter v. Three Springs Residential Treatment,* 132 F.3d 635 (11th Cir.1998); *Burrell v. Board of Trustees of Georgia Military College,* 125 F.3d 1390 (11th Cir.1997); *Harris v. Shelby County Board of Education,* 99 F.3d 1078 (11th Cir.1996); and *Trotter v. Board of Trustees of the University of Alabama,* 91 F.3d 1449 (11th Cir.1996).

[15]In this section, we discuss the superiority of the preponderance definition to the dictionary definition. We note, however, that the same arguments would recommend the preponderance definition over *any* definition of "direct evidence" based upon an evidentiary standard higher than a preponderance of the evidence.

by the example of the racist personnel manager in part II.A. Likewise, such discrimination is possible despite the fact that the person is not qualified for the relevant position.[16] Numerous people in America hold positions for which they are not qualified; this happens because, for instance, the employer may not be aware that the employee is unqualified, the employer may have hired the employee as a means of returning a favor to someone (despite the fact that the employee was unqualified for the position), or the employer may hope that the employee will in due time acquire the necessary qualifications. Therefore, it is possible for an employer to discriminate on the basis of a protected personal characteristic in a manner that does not allow the victim of the discrimination to establish the *McDonnell Douglas* presumption. As our cases have made clear, where a plaintiff cannot establish the *McDonnell Douglas* presumption, his only other option is to present direct evidence of discrimination. If direct evidence were to mean only evidence that proves discrimination without presumption or inference, then we would have created a system in which a plaintiff would be denied the opportunity to recover for employment discrimination despite the fact that he could prove such discrimination by a preponderance of the (circumstantial) evidence.

The significance of this is two-fold. First, such a system would surely frustrate congressional intent. The purpose of employment discrimination law—as is clear from the plain language of the relevant statutes—is to prevent employment decisions based on certain protected personal characteristics. When such a decision can be proven by a preponderance of the evidence, but the plaintiff nevertheless loses, congressional intent has been frustrated.

Second, such a system would frustrate the purpose of *McDonnell Douglas*. Prior to *McDonnell Douglas,* employment discrimination cases were fairly straightforward—the plaintiff had the task of proving improper discrimination by a preponderance of the evidence. *See supra* part II.A. The *McDonnell Douglas* presumption was added to the law to make the plaintiff's task slightly easier. *See id.* This court has

---

[16]An individual is "qualified" for a position, for purposes of employment discrimination law, if he meets the criteria that the employer has specified for the position. *See Thornley v. Penton Publishing, Inc.,* 104 F.3d 26, 29 (2d Cir.1997).

responded to the development of this presumption by stating that there are now two means of proving employment discrimination: (1) *McDonnell Douglas,* or (2) direct evidence. If we were then to use the dictionary definition of direct evidence, we would, in some instances, be making the plaintiff's task more difficult than it would have been in the absence of *McDonnell Douglas*—namely, in the situation in which the plaintiff can prove discrimination by a preponderance of the (circumstantial) evidence, but cannot satisfy the requirements needed to establish the *McDonnell Douglas* presumption. *McDonnell Douglas* would thereby be turned on its head; a presumption that was designed to help plaintiffs would be the basis for a system that makes a plaintiff's task more difficult.

b.

The Supreme Court has stated that courts should not "treat discrimination differently from other ultimate questions of fact." *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482. If we were to require non-circumstantial evidence to prove that a protected personal characteristic was the basis of an employment decision, we would be treating this factual question very differently from other ultimate questions of fact. As a general rule in the federal courts, direct and circumstantial evidence are not distinguished; all relevant evidence is to be considered in deciding a case. *Cf. Holland v. United States,* 348 U.S. 121, 139-40, 75 S.Ct. 127, 137-38, 99 L.Ed. 150 (1954) (stating that, in criminal cases, circumstantial evidence is "intrinsically no different from testimonial evidence"). This is true, for instance, in equal protection jurisprudence; determining whether a given state action was motivated by a discriminatory purpose requires an "inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). There is no rational reason why employment discrimination law should be an exception to this general rule, and any definition of direct evidence other than the preponderance definition would carve out such an exception. *See Aikens,* 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3.

c.

22

The preponderance definition of direct evidence is also the only logical definition when considered in the light of other tenets of employment discrimination law. First, as outlined in part II.A, *supra,* the traditional framework for deciding civil cases is still (even after *McDonnell Douglas* ) the appropriate framework for deciding employment discrimination cases. As the Supreme Court has said, the central focus in an employment discrimination case "is always whether the employer is treating some people less favorably than others because of" a protected personal characteristic, and the *McDonnell Douglas* presumption is only one method of pursuing this inquiry. *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (internal quotation omitted). Use of the dictionary definition of direct evidence creates the possibility that a plaintiff may be excluded from the traditional framework altogether; if a plaintiff cannot establish the *McDonnell Douglas* presumption and cannot present a certain type of evidence, then he will have no opportunity to prove discrimination. The preponderance definition, in contrast, assures that the central inquiry in an employment discrimination suit always will be whether the employer has impermissibly discriminated; under the preponderance definition, even if the plaintiff cannot establish the *McDonnell Douglas* presumption, he will still have the opportunity to attempt to prove discrimination by a preponderance of the evidence.

In addition, the law is clear that if the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action, it is irrelevant whether the plaintiff has properly established the elements needed to invoke the *McDonnell Douglas* presumption. *See id.* at 715, 103 S.Ct. at 1482. In other words, once the employer has done what would be required of it if the plaintiff properly invoked *McDonnell Douglas,* the *McDonnell Douglas* presumption is no longer relevant. Under the preponderance definition of direct evidence, this rule makes sense. The *McDonnell Douglas* presumption serves only to force the employer to produce certain evidence; once the employer has done so, the plaintiff still bears the burden of proving illegal discrimination by a preponderance of the evidence. Meanwhile, failure to establish the *McDonnell Douglas* presumption, under the preponderance definition of direct evidence, means only that the

23

case will be treated like any other civil case—in other words, the plaintiff must present evidence sufficient to prove illegal discrimination by a preponderance of the evidence (but without the benefit of a proferred explanation from the employer). Therefore, if the employer has volunteered a nondiscriminatory reason for the contested employment action, the distinction between a *McDonnell Douglas* case and a direct evidence case breaks down, and the question of whether the plaintiff successfully established the *McDonnell Douglas* presumption becomes irrelevant. In contrast, under a dictionary definition of direct evidence, the rule that the *McDonnell Douglas* presumption becomes irrelevant once a legitimate, nondiscriminatory reason is volunteered by the employer is senseless. Under the dictionary definition, failure to establish the *McDonnell Douglas* presumption means that the plaintiff must prove improper discrimination without the benefit of any inferences by the trier of fact. Therefore, if on appeal it became clear that the district court erred in finding that the plaintiff had established the *McDonnell Douglas* presumption, then the appellate court would be required to make a separate inquiry into whether the plaintiff had presented "direct evidence" of discrimination. This need for a separate inquiry simply does not fit with the rule that if the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action, it is irrelevant whether the plaintiff has properly established the elements needed to invoke the *McDonnell Douglas* presumption.

Finally, the preponderance definition is consistent with the rule that if a plaintiff can prove improper discrimination by direct evidence, the defendant can nevertheless prevail by showing that the same employment decision would have been made absent the discriminatory motive.[17] *See Haynes v. W.C. Caye & Co.,* 52 F.3d 928, 931 (11th Cir.1995). In other words, the argument that the same decision would have been made apart from discrimination operates as an affirmative defense. *See Price Waterhouse v. Hopkins,*

---

[17]In Title VII cases, this showing serves only to limit the liability of the employer; it does not relieve the employer of liability altogether. *See* 42 U.S.C. §§ 2000e-2(m), 2000e5(g)(2)(B) (1994). In other areas of employment discrimination law, however, this showing is a complete defense.

490 U.S. 228, 246, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989) (plurality opinion).[18] An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence. This understanding fits with the preponderance definition of direct evidence—if the plaintiff can prove discrimination by direct evidence (i.e., by a preponderance of the evidence), the defendant can nevertheless prevail if it can establish that it would have taken the same action in the absence of discrimination. In contrast, under the dictionary definition of direct evidence, the defendant's affirmative defense would come into play only when the plaintiff has presented a certain type of evidence, unlike any other affirmative defense known to the law.

III.

We now turn to the facts of this case. The plaintiff, James Wright, alleges two possible impermissible motivations for his discharge: (1) his age, or, alternatively, (2) his filing of a complaint with the EEOC. We address both claims below.

A.

The district court, applying the dictionary definition of direct evidence, held that Wright had failed to present direct evidence of age discrimination in regard to his termination. The district court then concluded that Wright could not make use of the *McDonnell Douglas* presumption because he could not prove that he was replaced by someone who differed in regard to the relevant personal characteristic (age); Wright's

---

[18]We note that in *Price Waterhouse,* Justice O'Connor's concurrence relied upon a preponderance definition of direct evidence. The concurrence stated that the affirmative defense that the same decision would have been made in the absence of discrimination becomes relevant when the plaintiff has "show[n] by direct evidence that an illegitimate criterion was a substantial factor in the decision." *Price Waterhouse,* 490 U.S. at 276, 109 S.Ct. at 1804 (O'Connor, J., concurring in the judgment). Justice O'Connor goes on to define "direct evidence" as "evidence sufficient to show that an illegitimate criterion was a substantial factor in the particular employment decision such that a reasonable factfinder could draw an inference that the decision was made 'because of' the plaintiff's protected status." *Id.* at 278, 109 S.Ct. at 1805 (O'Connor, J., concurring in the judgment). This is obviously not the dictionary definition of direct evidence: Justice O'Connor explicitly states that the trier of fact is expected to "draw an inference" of discrimination. Instead, Justice O'Connor's definition states that a plaintiff has presented direct evidence when a trier of fact could reasonably conclude that the contested employment action was caused by discrimination—essentially, a restatement of the preponderance definition of direct evidence.

25

employer, Southland, introduced unrebutted evidence that Wright was replaced by someone six months older than he. Consequently, the district court granted the employer's motion for summary judgment.

Applying the proper definition of direct evidence, however, it is clear that Wright had direct evidence that he was terminated because of his age. The two people at Southland responsible for the decision to terminate Wright were Sharon Powell and Phil Tatum, the market manager and field consultant (respectively) in the geographical area in which Wright's store was located. According to Wright, less than three months before his termination, Sharon Powell told him that he might want to cease working as a 7-11 store manager because he may be getting too old to understand the store's new computer programs.[19] *Cf. Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993) ("It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age."). Around the same time, Phil Tatum allegedly told another Southland employee that Wright was too old, and that he was looking for younger store managers.[20] Thus, in regard to

---

[19]There is no evidence in the record that Wright actually had difficulties with any 7-11 computer programs.

[20]Wright also alleges that Phil Tatum's predecessor, Bill Bishop, made a number of statements reflecting an intent to terminate Wright because of his age. Specifically, Bishop repeatedly told Wright that he wanted to get rid of him because he had been around too long, and that he wanted to get a younger person into his position. However, because Bishop was not involved in the decision to terminate Wright, any discriminatory intent he may have possessed could not have been the cause of Wright's termination unless he somehow manipulated the decisionmakers (Powell and Tatum) into terminating Wright—for instance, by making a recommendation on which the decisionmakers relied, or by providing false information to the decisionmakers for consideration in their decision whether to retain Wright. *See Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236, 1249 (11th Cir.1998) (describing "cat's paw" theory of liability in employment discrimination cases, under which a person with discriminatory animus manipulates the decisionmaker). Bishop's only input into the termination decision was three letters he wrote to Wright (and placed in Wright's personnel file) in which he documented certain problems involving Wright's accounting procedures. These letters were in turn used by Powell and Tatum in their decision to terminate Wright. Wright has presented no evidence that any misinformation was contained in the letters—in other words, he has presented no evidence that the accounting problems documented in the letters did not actually exist. Consequently, there is no evidence that Bishop manipulated the decisionmakers, and thus any discriminatory intent on his part could not be said to be the cause of Wright's termination. Any discriminatory intent harbored by Bishop is therefore irrelevant to the question of Southland's liability under the ADEA. *See Holifield v. Reno,* 115 F.3d 1555, 1563-64 (11th Cir.1997) (" 'The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.' ") (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.,*

26

both of the relevant decisionmakers, Wright has presented evidence that each thought that Wright should not be in his position of employment because of his age. Furthermore, the evidence suggests that the decisionmakers had this mindset only three months before Wright's discharge, after nearly seventeen years of employment. Based on this evidence, a jury could reasonably conclude that, more probably than not, age discrimination was the cause of Wright's termination.[21]

This is of course not to say that Wright in fact has a valid claim of age discrimination; Southland has substantial evidence to support its position that Wright was fired because of problems relating to merchandise control and accounting procedures.[22] Wright's personnel file contained numerous documents attesting to these problems, and both Powell and Tatum cited these problems as the reason for Wright's discharge. Furthermore, neither Powell nor Tatum has admitted to making the discriminatory statements that Wright attributed to her/him. Finally, the fact that Wright was replaced by an individual six months older than he, although not conclusive, tends to prove that Wright was not fired due to his age.[23]

---

896 F.2d 5, 10 (1st Cir.1990)).

[21]Southland contends that all of the evidence upon which Wright relies is hearsay, which is inadmissible at trial and thus insufficient to defeat a motion for summary judgment. *See Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir.1996) (noting that, although evidence used to defeat a motion for summary judgment need not be admissible at trial, it must be capable of being reduced to admissible form). Hearsay is a statement made by someone other than the declarant, offered to prove the truth of the matter asserted. *See* Fed.R.Evid. 801(c). The statements in this case are not being offered to prove the truth of the matters asserted (e.g., that Wright was too old to operate Southland's computers), but rather to prove the state of mind of the decisionmakers. Consequently, they are not hearsay and may be considered in ruling on Southland's motion for summary judgment.

[22]Wright counters with evidence that this explanation is pretextual—for instance, evidence that younger store managers with more serious accounting problems were not terminated.

[23]There are numerous reasons why the replacement of Wright by an older individual does not rule out the possibility that Southland fired Wright because of his age. For instance, the replacement may simply have been an *ex post* attempt to avoid liability for age discrimination—in other words, once Southland realized it was facing a potential age discrimination suit, it attempted to "cover its tracks" by replacing Wright with an older individual. Alternatively, because Wright's replacement (who was already employed by Southland at the time of Wright's discharge) would otherwise have been placed in another store, the firing of Wright served to reduce Southland's total number of older store managers and thus could have been part of a systematic attempt by Southland to reduce its number of older store managers. Another theory would be that Southland

27

In sum, Wright has presented direct evidence of age discrimination. Consequently, there is a genuine issue of material fact as to the cause of Wright's termination, an issue that turns largely on whether Wright's witnesses or Southland's witnesses are to be believed. Such a credibility determination can be made only after trial, and the entry of summary judgment on Wright's ADEA claim was therefore inappropriate.

B.

Wright also alleges, as an alternative to his ADEA claim, that his termination was in retaliation for his filing of an age discrimination complaint with the EEOC, in violation of Title VII. The filing of a complaint with the EEOC is an impermissible basis on which to take an adverse employment action against an individual, just as race, sex, and age are impermissible bases for such an action. Consequently, the same analytical framework applies to retaliation claims as applies to other employment discrimination claims, including the availability of the *McDonnell Douglas* presumption. *See Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993).

The district court initially held that the plaintiff had failed to present direct evidence of retaliation, again using the dictionary definition of that term. It then assumed *arguendo* that the plaintiff had proven the facts required to establish the *McDonnell Douglas* presumption.[24] It held, however, that the evidence relating to the defendant's proffered legitimate, non-discriminatory reason for the termination—namely, accounting problems and merchandise shortages—was so strong that no reasonable jury could find for the plaintiff. The district court therefore granted summary judgment for the defendant.

We hold that Wright has presented direct evidence of retaliation. Wright filed an age discrimination

---

has higher standards for older store managers than for younger ones; Wright's replacement happened to be one of the few individuals who could attain the higher standards. These are only a few of the possibilities; the point is that the fact that Wright was replaced by an older individual does not necessarily lead to the conclusion that Wright was not a victim of age discrimination.

[24]Note that, because Southland volunteered a legitimate, nondiscriminatory reason for Wright's discharge, the district court should have skipped the *McDonnell Douglas* analysis altogether and proceeded directly to the question whether Wright had sufficient evidence to carry his burden of persuasion on the question of improper discrimination. *See Aikens,* 460 U.S. at 715-16, 103 S.Ct. at 1482.

complaint with the EEOC on November 28, 1994. In mid-January of the following year, Wright received a telephone call from Mike Raymond, a human resources specialist for Southland whose job responsibilities included handling charges of discrimination. According to Wright, Raymond asked him whether he was going to drop his complaint with the EEOC. Wright responded that he intended to continue pursuing the complaint, at which point Raymond said, "You will regret it," and hung up the telephone. Approximately one month later, Raymond recommended to Sharon Powell and Phil Tatum that Wright be terminated.[25] Wright was terminated a few days after Raymond made his recommendation.

From this evidence, a jury could reasonably conclude that, more probably than not, Wright was fired in retaliation for filing a complaint with the EEOC. The threat of "You will regret it," made by a human resources director, hardly could be anything other than a threat of some form of employment-related hardship. Furthermore, the threat was clearly linked to the statutorily-protected activity of pursuing a complaint with the EEOC. Finally, Wright was terminated—based in part on Raymond's recommendation[26]—one month thereafter. Thus, Wright's testimony, if believed, is sufficient to make out a case of retaliation. *See Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1190-91 (11th Cir.1997) (holding that a statement a decisionmaker's statement that an employee would be discharged plus express disapproval of a protected activity in a single conversation constituted "direct evidence" of retaliatory discharge).

Again, this is not meant to discount the weight of Southland's evidence to the contrary—namely, the documentary and testimonial evidence discussed in part III.A, *supra,* that Wright was fired because of accounting problems and merchandise shortages. This evidence, however, is not so overwhelming as to

---

[25]Raymond claims that this recommendation was based on his investigation into the accounting procedures at Wright's store.

[26]Given the nature of Raymond's position as a human resources specialist and his professional relationship with Sharon Powell (who often consulted with him on various personnel-related issues), a jury could reasonably conclude that she and Phil Tatum relied on his recommendation in deciding to terminate Wright. If so, Raymond's retaliatory intent could be considered the cause of Wright's termination, despite the fact that Raymond was not one of the people who actually made the decision to discharge Wright. *See supra* note 20.

prevent a reasonable jury—if it found Wright's evidence credible—from concluding that Wright was fired in retaliation for pursuing a complaint with the EEOC.

## IV.

The idea of "direct evidence" has been a source of great confusion in employment discrimination law. After examining the cases on the topic and the legal framework within which the term is used, it is clear that direct evidence can mean nothing other than evidence from which a trier of fact could conclude, more probably than not, that the defendant discriminated against the plaintiff in regard to the contested employment decision on the basis of a protected personal characteristic. Once "direct evidence" is so understood, it becomes equally clear that the plaintiff in this case has direct evidence of both age discrimination and retaliation. He therefore has a case for the jury.

The district court's order granting summary judgment is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

COX, Circuit Judge, specially concurring:

I do not join Judge Tjoflat's opinion. But I agree that the evidence is sufficient to create genuine issues of material fact on Wright's discharge claim and on Wright's retaliation claim. I therefore concur in the judgment vacating the entry of summary judgment on these claims and remanding for further proceedings.

HULL, Circuit Judge, specially concurring:

I agree that the district court erred in granting summary judgment for the defendant in this case but I concur only in the result reached by Judge Tjoflat's opinion. The plaintiff presented sufficient evidence to create a jury issue regarding both age discrimination and retaliation. Judge Tjoflat's opinion correctly vacates the judgment of the district court and correctly remands plaintiff's claims for a trial.