[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13573

Non-Argument Calendar

_____

CHRISTEN ROBINSON KELLEY,

Plaintiff-Appellant,

*versus*

CATHERINE HOWDEN,
GEMA / HOMELAND SECURITY,

Defendants-Appellees,

THE STATE OF GEORGIA,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-04429-WMR

_____

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Christen Robinson Kelley, an African-American employee, filed a lawsuit alleging that her employer, the Georgia Emergency Management Agency ("GEMA"), and her Caucasian supervisor, Catherine Howden, racially discriminated and retaliated against her in violation of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 US.C. §§ 2000e *et seq.*; and the Fourteenth Amendment. Ms. Kelley claims that GEMA and Ms. Howden treated her differently than similarly situated employees of other races by failing to promote her quickly enough and by putting her on a performance improvement plan ("PIP"). The district court entered summary judgment in favor of GEMA and Ms. Howden because they produced legitimate, non-discriminatory reasons for their actions and because Ms. Kelley failed to create an issue of fact that those proffered reasons were pretextual. We affirm.

I

We review *de novo* a district court's grant of summary judgment, construing all facts and drawing all reasonable inferences in

favor of the non-moving party. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018).

Summary judgment is appropriate when the record evidence shows that there are no genuine disputes as to any material facts and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). An issue of fact is not genuine unless a reasonable jury could return a verdict in favor of the non-moving party. *See Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013). We have consistently held that conclusory allegations have no probative value at summary judgment unless supported by specific evidence. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). We will give credence to evidence favoring the non-movant, as well as uncontradicted and unimpeached evidence from disinterested witnesses that supports the moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## II

In October of 2016, Ms. Howden hired Ms. Kelley as a Communication Specialist I ("CS1") at an annual salary of $36,000 and served as her direct supervisor. From the most junior position to the most senior, GEMA classifies its communication specialists as CS1, Communication Specialist 2 ("CS2"), and Communications Specialist 3 ("CS3"). By the spring of 2017, Ms. Kelley was on a team with Uyen Le, an Asian American CS2; Julia Regeski, a Caucasian CS2; and Brandy Mai, a Caucasian CS3.

Ms. Howden and GEMA opted for an informal approach to reviewing the performance of their employees. This entailed team meetings and regular feedback on assignments, rather than following the State Personnel Board ("SPB") rules, which called for the use of a uniform rating system and the designation of an agency review official. The parties disagree about whether the SPB rules were mandatory, but it is undisputed that GEMA and Ms. Howden did not conduct formal reviews for any of the members of the team, including Ms. Kelley.

In the fall of 2017, Ms. Howden began noticing Ms. Kelley's performance slip. Specifically, Ms. Howden found that Ms. Kelley's written work product required substantial editing before publication due to grammatical and other writing-related issues. Ms. Howden addressed these deficiencies through regular, informal, and constructive feedback. Believing that Ms. Kelley's subpar performance was due to her busy schedule, as she was working at GEMA while taking online graduate courses, Ms. Howden told Ms. Kelley in November of 2017 that she expected her to meet the performance level of her position following her graduation in December. In that November meeting, Ms. Kelley shared that she felt excluded from team meetings.

On January 9, 2018, Ms. Howden posted a job opening for a CS2. Ms. Kelley requested a salary increase to $45,000 and promotion to the CS 2 level via email. In support of her request, Ms. Kelley stated that her duties went beyond her job description as a CS1 and that she had earned her master's degree. According to Ms.

Howden, she denied Ms. Kelley's request because of her poor performance, which did not even meet the level of a CS1, much less a CS2. Ms. Howden also said that she denied Ms. Kelley's request because she did not submit a formal application, but instead sent an informal request via email.

On February 8, Ms. Howden placed Ms. Kelley on a PIP. Ms. Howden believed that the quality of Ms. Kelley's work was not improving "commensurate with her time and experience with the agency, most of her written work product still required editing prior to publication, she was still not completing tasks in a timely manner, and she [had] difficulty digesting constructive feedback about her job performance." Ms. Kelley signed the PIP to acknowledge that she received it but did not agree with its content.

The day after being placed on a PIP, Ms. Kelley had a meeting with Ms. Howden and two African-American representatives from the Office of Planning and Budget to discuss Ms. Kelley's next steps. Ms. Kelley asked why she was being treated differently and pointed out that she was the only African-American in her department. She did not get a response from the group and was instead met with blank stares. In her rebuttal to the PIP, Ms. Kelley wrote that she believed the PIP was issued in retaliation for her request for a salary increase, but she did not accuse her employers of racial discrimination.

On April 6, 2018, GEMA received a Notice of Charge of Discrimination from the Equal Employment Opportunity Commission on behalf of Ms. Kelley, alleging racial discrimination and

retaliation.  Three days later, GEMA assigned Brandy Mai, the CS3 on the team, to be Ms. Kelley's direct supervisor, so that Ms. Kelley and Ms. Howden would no longer need to interact.  In a follow-up meeting on May 1, Ms. Mai and GEMA's director of administration and finance signed a PIP update document that continued to outline the same deficiencies in Ms. Kelley's work performance.  Ms. Kelley claims the discrimination continued after the supervisor change, but at this meeting, Ms. Kelley did not report any issues.

On June 26, 2018, based on her improved work performance, Ms. Kelley was removed from the PIP.  On August 1, Ms. Kelley was promoted to CS2 and received a salary increase to $45,000.

Ms. Kelley asserts that Ms. Howden and GEMA denied her request for a promotion and salary increase because she is African-American and placed her on a PIP in retaliation of that same request.  As noted, the district court granted the defendants' motion for summary judgment, and Ms. Kelley appealed.  On appeal, Ms. Kelley argues that the district court erred by (1) failing to consider Ms. Howden's failure to follow the SPB guidance as direct evidence of discrimination; (2) holding that she did not raise sufficient evidence that the defendants' proffered reasons for failing to promote her are pretextual; and (3) entering summary judgment on the retaliation claim and mixed motive claims.

## III

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Equal Protection Clause prohibit employers from discriminating against employees on the basis of their race. *See* 42 U.S.C. §§ 2000e–2(a), 1981; U.S. Const. amend. XIV. Employment discrimination claims brought under Title VII, as well as under § 1981 and § 1983 based on the Equal Protection Clause require a showing that the employer intended to discriminate.

As to this element, the §§ 1981 and 1983 claims are subject to the same standards of proof and use the same analytical framework as intentional discrimination claims brought under Title VII, where the claims are based on the same set of facts. *See Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n. 6 (11th Cir. 2018). *See also Lewis v. City of Union City*, 918 F.3d 1213, 1220 n. 5 (11th Cir. 2019) (en banc) ("The same analysis—and in particular, the *McDonnel Douglas* burden-shifting framework—applies to those claims, as well"); *Flowers v. Troup County Sch. Dist.*, 803 F.3d 1327, 1335 n. 7 (11th Cir. 2015) ("Though Flowers brought claims under the Fourteenth Amendment's Equal Protection Clause and 42 U.S.C. §§ 1981 and 1983 as well, their fates rise and fall with his Title VII claim."); *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 (11th Cir. 1994) ("The *McDonnell Douglas* scheme for the allocation of burdens and the order of presentation of proof also applies in § 1981 cases involving discriminatory treatment in employment situations."). For all of these claims, an employee must establish,

through either direct or circumstantial evidence, that the employer acted with discriminatory intent.

Where a plaintiff has direct evidence of discrimination, the summary judgment inquiry ends there. In other words, the district court may not grant summary judgment for the employer where the employee "presents direct evidence that, if believed by the jury, would be sufficient to win at trial . . . , even where the movant presents conflicting evidence." *Jefferson*, 891 F.3d at 922 (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997)) (internal quotation marks omitted).

If the plaintiff only presents circumstantial evidence of the employer's discriminatory intent, we generally analyze the claim under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This framework requires the plaintiff to create an inference of discrimination through a *prima facie* case. *See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 n. 2 (11th Cir. 2007). [1]

Then, "the burden shifts to the employer to articulate a non-discriminatory bases for its employment action." *Id.* (citation

---

[1] To establish a prima facia case on the basis of a failure to promote, a plaintiff must show that "(i) she belonged to a protected class; (ii) she was qualified for and applied for the position; (iii) despite qualifications, she was rejected; and (iv) the position was filled with an individual outside the protected class." *Springer*, 509 F.3d at 1347 n. 2 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802 and *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005)).

21-13573                Opinion of the Court                    9

omitted). "If the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual." *Id.* (citation omitted).

As an alternative to the *McDonnell Douglas* framework, an employee can survive summary judgment if he or she presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (en banc). But, even under this framework, a plaintiff must establish that the employer's justification is pretextual. *See id.* ("a 'convincing mosaic' may be shown by evidence that demonstrates . . . that the employer's justification is pretextual"); *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) ("A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things . . . pretext."). [2]

Ms. Kelley invokes the "convincing mosaic" and the *McDonnell Douglas* frameworks. As explained more fully below, Ms. Kelley's claims fail under both.

### A

We will first address Ms. Kelley's contention that the defendants' failure to follow the SPB rules is direct evidence of

---

[2] The "convincing mosaic" test is generally used in cases where a plaintiff cannot point to a similarly situated comparator and thus cannot establish a prima facie case under *McDonnell Douglas*. *Lewis*, 934 F.3d at 1185.

discrimination. The district court determined that the failure to follow the SPB rules was not direct evidence of discrimination. It pointed to the "uncontradicted evidence" that Ms. Howden used (or failed to use) the same procedures with all employees "across the board and not just as to [Ms. Kelley]." DE 110 at 3-4. Ms. Kelley argues that the failure to follow the rules is direct evidence of racial discrimination because the purpose of the SPB rules is to eliminate employment discrimination and because the SPB rules are mandatory. Neither of these arguments have merit.

"Direct evidence is evidence that, if believed, proves the existence of discriminatory intent without inference or presumption." *Jefferson*, 891 F.3d at 921-22. In contrast, circumstantial evidence "suggests, but does not prove a discriminatory motive." *Id.* "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* at 922 (internal quotation marks and citation omitted); *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (same).

Under Ms. Kelley's theory, the Georgia legislature passed O.C.G.A. § 45-20-1, which established the SPB, in order to achieve six objectives including assuring fair treatment of employees "without regard to race, color, national origin, sex, age, disability, religious creed, or political affiliations." Then, the SPB made a series

of rules, including Rule 14, which requires a formal evaluation process for employees. [3]

According to Ms. Kelley, the defendants' failure to follow Rule 14, which it was passed by a board that was formed in part to prevent employment discrimination, is direct evidence that she was not promoted because of her race.  Ms. Kelley's theory fails because it requires many inferences, presumptions, and entire leaps in logic. For example, her theory assumes that Ms. Howden and GEMA ignored Rule 14 in order to racially discriminate against Ms. Kelley and that Ms. Howden and GEMA did not promote her because of the lack of formal review.

The defendants' failure to follow the SPB rules—regardless of whether those rules are mandatory rules or mere guidelines— does not prove racial discrimination in declining to promote Ms. Kelley.  The failure to conduct formal reviews of <u>all</u> team members does not explicitly implicate race in any way, and, as the district court pointed out, the uncontradicted evidence shows that Ms. Howden used the same review process procedures with all the employees she supervised "across the board."  D.E. 110 at 4.  Ms. Howden treated all of her subordinates the same, and therefore the

---

[3] GEMA and Ms. Howden contend that Rule 14 suggests but does not require formal evaluations.  We assume for summary judgment purposes that Rule 14 is mandatory because we must examine the evidence in the light most favorable to Ms. Kelly.

failure to follow the SPB rules is not direct evidence of racial discrimination.

Ms. Kelley asks us to apply what she views as a broader definition of "direct evidence"—i.e. "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic." *Wright v. Southland Corporation*, 187 F.3d 1287, 1293 (11th Cir. 1999). Her reliance on Judge Tjoflat's opinion in *Wright* is misplaced, however, because neither of the other two members of the panel joined the opinion, instead concurring only in the result because they agreed that the employee's evidence was sufficient to create a genuine issue of material fact as to survive summary judgment. *Id.* at 1306 (Cox, J. concurring in result only); *id.* (Hull, J. concurring in result only). Further, our case law both before and since *Wright* has defined direct evidence as "evidence, which if believed, proves existence of fact in issue without interference or presumption." *See Merritt*, 120 F.3d at 1189; *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir. 2005); *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 854 (11th Cir. 2010); *Holland*, 677 F.3d at 1055; *Jefferson*, 891 F.3d at 921.

Even if the language in *Wright* were binding, Ms. Kelley's evidence is not direct evidence under any definition. The failure to conduct formal reviews does not suggest race discrimination because Ms. Howden and GEMA did not conduct formal reviews for any of the team members, regardless of their race. And, at any rate, evidence that merely suggests discriminatory motive is not direct

21-13573          Opinion of the Court          13

evidence. *See Burrell v. Bd. Of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997) (the employer's statement that too many women filled First Federal's officer positions suggests but does not prove that gender discrimination was the motive to terminate Plaintiff). In short, the district court correctly determined that Ms. Kelley did not present any direct evidence of discrimination.

## B

We next address Ms. Kelley's argument that GEMA and Ms. Howden's proffered reasons for declining to promote Ms. Kelley are pretextual. Ms. Kelley seems to invoke both the *McDonnell Douglas* framework and the "convincing mosaic" test in her brief, but her claims fail under either approach because she did not show that the defendants' proffered reason was pretextual.

GEMA and Ms. Howden proffer that they did not promote Ms. Kelley due to her lackluster performance as a CS1. Ms. Kelley attempts to show that this reason is pretext and that she was really not promoted because of her race. [4]

When pretext is an issue, the ultimate question is whether the employer's proffered reasons were a cover-up for discrimination. *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). A

---

[4] Because we conclude that Ms. Kelley did not show that the employers' proffered reasons are pretextual, for the purposes of this appeal, we assume that Ms. Kelley sufficiently established a prima facie case.

plaintiff "cannot recast the reason but must meet it head on and rebut it." *Holland*, 677 F.3d at 1055 (internal quotation marks omitted). At this stage, the plaintiff's burden of rebutting the employer's proffered reasons 'merges with the [plaintiff's] ultimate burden of persuading [the finder of fact] that she has been the victim of intentional discrimination.'" *Id.* at 1056 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs or "reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266.

The plaintiff may demonstrate pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the employer's proffered reasons for its actions that a reasonable factfinder could find them "unworthy of credence." *Springer*, 509 F.3d at 1348 (quotation marks omitted). If the reason is one that might motivate a reasonable employer, the plaintiff cannot succeed by simply quarrelling with the wisdom of the reason. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). The sole concern is whether the adverse action was prompted by discriminatory animus. *See Rojas*, 285 F.3d at 1342. Because of the summary judgment posture of the case, Ms. Kelley had to present sufficient evidence for a jury to find pretext.

Ms. Kelley argues that a "convincing mosaic of circumstantial evidence" refutes Ms. Howden's and GEMA's claim that they did not promote Ms. Kelley due to her poor performance. Ms. Kelley's proffered mosaic consists of six pieces: (1) GEMA's inherently

discriminatory failure to follow Georgia's State Personnel Board rules, (2) GEMA's failure to keep employee performance records in violation of SPB rules, (3) GEMA's failure to follow promotion protocols under the SPB rules, (4) the length of time between Ms. Howden first noting Ms. Kelley's poor performance and placing Ms. Kelley on the PIP, (5) Ms. Howden's inquiry about Ms. Kelley's teleworking, and (6) GEMA's failure to maintain an Agency Review Official in violation of SPB rules.

As a crucial threshold matter, none of these pieces—individually or collectively—rebut the employers' proffered reasons for declining to promote Ms. Kelley head on—i.e., none of these pieces show (or permit a jury to find) that Ms. Kelley did not have poor performance. *See EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1101 (5th Cir.) ("proof that an employer did not follow correct or standard procedures" may "well be unfair or even unlawful and yet not be evidence of [racial] bias") (citation omitted). Regarding arguments one, two, three, and six, the failure of GEMA and Ms. Howden to follow the SPB rules with respect to all members of the team, regardless of that team member's race, does not show (or permit a finding of) racial discrimination. Nor does this failure indicate pretext because it has no bearing on whether Ms. Kelley's performance was poor.

Ms. Kelley's fourth argument—that the seven months between Ms. Howden first noticing Ms. Kelley's poor performance and placing Ms. Kelley on a PIP is evidence of pretext—also misses the mark. In asserting this argument, Ms. Kelley blends together

her discrimination claims and her retaliation claim. She alleges that her employer declined to promote her because of her race and that she was put on a PIP for requesting the promotion—not that she was put on a PIP because of her race. Ms. Kelley's timing argument does not show that her employers' proffered reasons for deciding not to promote her are pretextual.

Ms. Kelley's fifth argument fares no better. Ms. Kelley points to a comment that Ms. Howden made in September of 2019, over a year and a half after she denied Ms. Kelley's request for a promotion and a raise. Ms. Howden asked someone in human resources whether Ms. Kelley was teleworking one day. This single query is not sufficient to create a jury issue as to whether Ms. Howden refused to promote Ms. Kelley a year and a half earlier because of racial animus. *See Rojas*, 285 F.3d at 1342-43 (isolated comments outside of the relevant time do not support pretext).

## C

We now address Ms. Kelley's argument that the district court erred in granting summary judgment on the retaliation claim because the "PIP is nothing but retaliation for Ms. Kelley asking that her salary be equal to her comparators." Appellant's Br. at 36. This conclusory statement is woefully insufficient at the summary judgment stage. *See Leigh*, 212 F.3d at 1217 (for the purposes of summary judgment "conclusory allegations without specific supporting facts have no probative value").

In support of her argument, Ms. Kelley also points out that (1) Ms. Howden "never received any training on creating a PIP"; (2) Ms. Howden "had never written a PIP before February 8, 2018"; and (3) GEMA does not "have a policy examining when an employee should be put on a PIP." Appellants' Br. at 35-36. None of these contentions rebut the defendants' assertion that she was placed on a PIP due to her poor performance. Nor do they suggest that they placed her on the PIP in retaliation for her request for a promotion. *See University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013) ("a plaintiff making a discrimination claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). At most, Ms. Kelley's contentions show a that GEMA's processes were informal or disorganized.

## D

Finally, we examine Ms. Kelley's cursory contention that the district court erred by granting summary judgment on the discrimination claims under a mixed motive theory. Ms. Kelley does not make any argument specific to this theory, and instead incorporates her arguments regarding her employers' racial discrimination, which have all been addressed above. Her failure to make any argument or cite any authority means that she has abandoned the argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1115, 1120 (11th Cir. 2009) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.").

## IV

We affirm the district court's entry of summary judgment in favor of Ms. Howden and GEMA.

**AFFIRMED.**